**Andrew P. HART and Kirby Lumber Corporation, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**CITY OF LAREDO, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**Nos. 76–3849, 78–1227.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1978.

Rehearing Denied Jan. 11, 1979.

Dan McNulty, Asst. U. S. Atty., Beaumont, Tex., Edmund B. Clark, Peter R. Taft, Asst. Attys. Gen., Anne Almy, Atty., Appellate Section, Land and Natural Resources Div., Washington, D. C., Roby Hadden, U. S. Atty., Tyler, Tex., for defendant-appellant U. S.

J. Glenn Barber, Jasper, Tex., for Hart.

Joyce Cox, Houston, Tex., for Kirby Lumber Corp.

H. C. Hall, III, W. W. Allen, Laredo, Tex., for City of Laredo.

J. A. Canales, U. S. Atty., L. G. Clinton, III, Asst. U. S. Atty., Houston, Tex., Carl Strass, Anne S. Almy, U. S. Dept. of Justice, Lands and Natural·Resources Div., Appellate Section, Sanford Sagalkin, Acting Asst. Atty. Gen., Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee U. S.

Before GEE and VANCE, Circuit Judges, and HUNTER *, District Judge.

* United States Senior District Judge for the Western District of Louisiana, sitting by designation.

VANCE, Circuit Judge:

These appeals present similar issues arising under the Quiet Title Act, 28 U.S.C. § 2409a. We hold that both suits were time-barred by the twelve-year statute of limitations contained in the Act, Title 28, U.S.C. § 2409a(f). The facts are different in the two cases and will be stated separately.

### Kirby Lumber Corporation Case

Kirby Lumber Corporation (Kirby) and Andrew P. Hart (Hart)[1] seek reformation of a 1961 deed by which Kirby had conveyed land to the United States. The land was bought in that year by the U.S. Army Corps of Engineers in connection with the construction of a dam and reservoir. Representatives of the Corps notified Kirby that it intended to acquire in fee simple the area for the reservoir up to the 171-foot elevation level. Kirby was later told that the Corps would purchase some land in fee up to the 179-foot level because erosion on certain steep inclines was possible. Kirby was told where the contour line would be marked and surveyors for the company computed the amount of acreage involved in the transaction. Through an error in the Corps' calculations, the United States bought land above the 179-foot elevation level. Kirby also contends that it later discovered that no steep bluffs in the area warranted purchase of the land up to the 179-foot mark.

The metes and bounds description of the land bought in 1961 by the United States from Kirby is not challenged. Nor does Kirby dispute that the United States paid the agreed price for the full amount of property contained in the deed. The contention of Kirby and Hart is that the United States acquired more land than it needed as a result of a mutual mistake.

The district court found as fact that the Corps of Engineers had mistakenly made misrepresentations of fact to Kirby with respect to (1) the steepness of the banks adjacent to the 171-foot level, (2) the necessity of its acquiring land to the 179-foot level, (3) the description of the boundaries as meanders of the 179-foot level, and (4) the amount of total acreage between 171 feet and 179 feet. The court further found that Kirby did not discover the misrepresentations until 1973 and in the exercise of ordinary prudence would not have discovered the errors until that time. On the basis of these findings it concluded that Kirby and Hart were entitled to have the deed reformed to provide that the United States owns fee simple title only to the 171-foot contour line with a flowage easement above that level to the 179-foot contour, and that Kirby and Hart should refund to the United States a proportionate amount of the original purchase price.

### City of Laredo Case

This case involves title to the minerals underlying the former Laredo Air Force Base. In 1943 the United States purchased the disputed property from the City for use as a pilot training facility. After the war it reconveyed the property to Laredo for use as a municipal airport. When the Korean conflict began, the United States leased the property from Laredo for use as an Air Force base. In 1954 the mayor of the City of Laredo wrote to the Air Force requesting that the base be designated a permanent military installation. At that time the term "permanent" had significance in connection with the Air Force's requirements for construction at the base of family (or so-called Wherry) housing. The City also appears to have been concerned with securing the designation as an administrative manifestation of intent. In any event the Air Force advised the City of its requirements for a permanent installation designation. In fulfilling these requirements, the City conveyed the property back to the United States, and the deed was duly recorded in

---

1. In 1973 Hart acquired 13 acres from Kirby. The Hart acquisition abuts the disputed land. Hart discovered and brought to Kirby's attention the mistakes that are the basis of their claim. Hart is joined as a party plaintiff because he is a successor to Kirby's interest in 13 acres.

1955. At that time the Air Force notified Laredo that the attorney general had approved title to the property and that the only unfulfilled requirement was requesting the governor to relinquish state jurisdiction in order that the federal government might have exclusive jurisdiction. In 1957, however, the Air Force advised Laredo that there had been a change in policy and that exclusive jurisdiction would not be requested. In March of that year Laredo was advised through its congressman that the Air Force base would not be designated a permanent installation because that term had lost its significance in connection with construction of housing and was no longer being used by the Air Force. The base continued to be used as an active military installation, however, until 1974 when it was deactivated and transferred to the General Services Administration for disposal.[2] G.S.A. transferred the surface to the City. The City then filed this suit seeking to cancel or reform the 1955 deed so that it would also acquire the mineral estate.

Both sides agree that no issue of fact is disputed. The district court entered summary judgment for the United States on the basis of its holding that under the doctrine of sovereign immunity the court lacked jurisdiction over actions against the United states to cancel or reform deeds and in addition that any such action was barred by the statute of limitations.

### Both Claims Are Barred

The government argues strenuously that reformation of the two deeds is not within the scope of the relief authorized by the Quiet Title Act. It points out that suits against the sovereign cannot be maintained without express statutory consent, *Stanley v. Schwalby*, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960 (1896), and that statutory consents to suit are strictly construed. *McMahon v. United States*, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). It argues that an equitable claim to have a deed reformed is fundamentally different from the type of proceeding to which Congress consented when it enacted the Quiet Title Act. We do not find it necessary to resolve this contention because the claims of both Kirby and the City of Laredo were clearly barred.

The consent of Congress as embodied in the Quiet Title Act contains the following express statute of limitations:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. *Such action* shall be deemed to have *accrued on the date the plaintiff* or his predecessor in interest *knew* or should have known *of the claim of the United States.*

28 U.S.C. § 2409a(f) (emphasis added).

█ In both cases before us, the ownership claimed by the United States was well known to the plaintiffs more than twelve years before suit was brought. Kirby had delivered a deed to the United States describing the conveyed lands by metes and bounds. There is no dispute that it knew precisely the extent of United States' ownership. At the heart of the Kirby claim is its assertion that it did not know until 1973 that the Corps of Engineers had misrepresented its needs and mistakenly bought an excessive amount of land. Similarly, the City of Laredo had conveyed the real estate in question to the United States. Its contention is that the government did not effectively accept the deed because it did not designate the Air Force base as a permanent military installation. It does not dispute, however, that since the air field was reconveyed to the government, the United States has held record legal title, has physically occupied the real estate, and has operated thereon a military installation. More than twelve years before it filed suit, the City of Laredo was

---

**2.** There is no indication from the record that the failure of the Air Force to designate the base as permanent had any effect on such action. Subsequent to the conveyance of the base by Laredo to the United States, substantial numbers of both permanent bases and nonpermanent bases were closed.

notified that the Air Force had decided not to declare the base a permanent installation because the designation had become meaningless.

In granting the consent to sue, Congress has full latitude to impose such conditions as it sees fit. It could, for example, have made the Quiet Title Act wholly prospective in operation, and it apparently considered doing so. The legislative history indicates that in some respects the Senate's original proposal would have treated stale claims more liberally than did the Act as it was finally adopted. The Department of Justice objected with the result that this provision was deliberately tightened up by the House of Representatives. In House Report No. 92–1559, 92d Congress, 2d Session (1972), this history is detailed as follows:

Subsection (f) is different from the original proposal, but this is the language recommended by the Department of Justice in its letter of September 20, 1972, which was referred to above. As that letter stated, the Department is willing to accept this provision making the provisions added by the bill retroactive for twelve years. This is intended to give persons claiming right, title or interest in real property in which the United States claims an interest, that period in which to bring suit. As was noted by the Department, *the period is fixed in this manner so that the Government will not have to defend against sta[l]e claims.*

. . . . .

As has been noted one of the basic provisions in the committee amendment is the retroactive feature which provides for a 12 year statute of limitation. The original draft submitted to the Congress by the Justice Department explicitly provided that the proposed bill would ". . . not apply to any claim or right of action which accrued prior to the date of its enactment." At the hearing on S.216 and related bills on February 24, 1972, much of the testimony related to some of the specific problems concerning title to lands which motivated, in part, the introduction of this legislation. The existing problems faced by many citizens concerning titles to land in which the United States claims an interest could not be the subject of actions under legislation with the original Department Language which would have had only prospective force. In the opinion of the committee, the language proposed by the Justice Department providing for a twelve year period for the bringing of such actions will make a reasonable provision for the bulk of the existing controversies concerning title.

1972 U.S.Code Cong. & Admin.News, pp. 4550–51 (emphasis added).

The referenced recommendation of the Department of Justice was contained in a letter from the Deputy Attorney General to the House Subcommittee Chairman dated September 20, 1972. It expressed the Department's opposition to the provision in the Senate version of the bill that would have given claimants two years after the effective date of the Act to begin an action, and would thereby have made the Act fully retroactive. In support of the adopted language the Deputy Attorney General wrote,

As you know, the Department of Justice has been reluctant to open up stale claims to litigation. If the bill were made fully retroactive, there could be a flood of litigation on old claims, many of which had already been submitted to the Congress and rejected. However, we believe that a reasonable period of retroactive application of the bill would not put an undue burden on the Department and the courts, and we would be willing to accept a provision making the bill retroactive for twelve years.

Similarly, we suggest that the statute of limitations be extended from six to twelve years for quiet title actions. This will give claimants to land in which the United States also claims an interest ample time to bring suit without necessitating the United States' having to defend against stale claims.

*Id.* at 4553.

Whether the equitable considerations advanced by plaintiffs would be persuasive

under other facts is wholly beside the point. We have before us an Act of Congress that is understandable in both language and intent. The Supreme Court spoke specifically of a period of limitations applicable to a waiver of sovereign immunity in *McMahon, supra,* when it held, "[S]tatutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign." 342 U.S. at 27, 72 S.Ct. at 19. Such a construction of the Quiet Title Act compels our conclusion that the Kirby and Laredo claims were both barred by the limitations provision of the Act. *See Grosz v. Andrus,* 556 F.2d 972 (9th Cir. 1977).

The district court's judgment in the case of Hart and Kirby against the United States will be reversed and remanded with instructions that the plaintiffs' complaint be dismissed. In the case of the City of Laredo against the United States, summary judgment in favor of the United States will be affirmed.

REVERSED as to Case No. 76–3849.

AFFIRMED as to Case No. 78–1227.