512 F.Supp. 36 (1981)
STATE OF CALIFORNIA ex rel. STATE LANDS COMMISSION, Plaintiff,
v.
UNITED STATES of America et al., Defendants.
No. C 79-1865 RPA.
United States District Court, N. D. California.
January 6, 1981.
As Amended February 6, 1981.
*37 Bruce S. Flushman, Joseph C. Rusconi, Linus Masouredis, Deputy Attys. Gen., San Francisco, Cal., for plaintiff.
Rodney H. Hamblin, Asst. U. S. Atty., San Francisco, Cal., for defendants.

OPINION AND ORDER
AGUILAR, District Judge.
This action is before the Court on plaintiff State of California's motion to strike the affirmative defenses of the statute of limitations, laches and estoppel asserted by the defendant United States of America in its answer to the State's complaint to quiet title to the land comprising Hamilton Air Force Base. The Court also has before it the State's motion for reconsideration of the Magistrate's ruling compelling production of certain documents.

Factual and Procedural Background
This lawsuit is one of a number of lawsuits seeking a judicial determination of the proper disposition of a choice parcel of land bordering the San Francisco Bay in Marin County, California. Beginning in 1931 the United States acquired, through various condemnation actions and by purchase and donation deed, portions of land which collectively *38 make up the land on which the United States built a military airbase known as Hamilton Air Force Base (hereinafter referred to as the "Base"). The Base was used as an airbase until it was decommissioned in 1974. In 1976, portions of the Base were declared by Congress to be surplus property. Pursuant to its statutory authority to dispose of surplus property (see 40 U.S.C. § 484(a)), the General Services Administration has published a plan for disposition of the property. This plan is the subject of a number of the lawsuits relating to the property.
This action between the State and the United States, however, involves the sole question of title to the land sought to be disposed of by the United States. Thus, if this lawsuit were to be resolved in favor of the State, all lawsuits challenging the plan for disposition of the property prepared by the General Services Administration would necessarily become moot, as the General Services Administration would have no power to dispose of the land if the United States is determined to have no title to the land.
The State brought this quiet title action against the United States pursuant to 28 U.S.C. section 2409 as to those portions of the land comprising the Base that had been acquired by the United States by donation deed. The essence of the State's claims is that these lands are sovereign trust lands, and as such the State, in the absence of formal condemnation proceedings, holds the lands in trust for the people of California free from any federal claim of title. It should be noted that the State makes no claim of title to those lands acquired by the United States by condemnation.
In its answer to the State's complaint, the United States denies that the State has any title interests in the Base or that the State holds any of the land comprising the Base in trust for the public. Relevant to the present proceedings, the United States asserts that the State's action is barred by the Statute of Limitations (28 U.S.C. § 2409a(f)), laches and estoppel. (Paragraphs 28, 29, 30 of the United States' answer to the First Amended Complaint). In support of its contention that the State is barred by these three equitable defenses from claiming any title interest in the lands, the United States alleges that employees and attorneys for the State knew of the United States' claim of title in fee simple to the property for in excess of twenty years, but despite this knowledge, took no steps to protect the State's title interests.
The State now moves to strike the three affirmative defenses on the ground that these defenses are not available where a sovereign state is suing to quiet title to sovereign trust lands.[*]

Propriety of Deciding the Motion to Strike
The United States contends that the motion to strike should be denied as premature, asserting that all facts surrounding the controversy involved in the lawsuit should be ascertained before determining whether sufficient facts exist to apply the three defenses to bar the action. The United States would thus have resolved the factual questions of (1) whether the land is sovereign trust land and (2) whether State employees knew of the claim of title by the United States but failed to protect the State's interest, before resolving the legal issue of whether the three equitable defenses can apply to a state asserting title to sovereign trust lands.
Motions to strike are often looked on with disfavor because of the tendency for such motions to be asserted for dilatory purposes. 5 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1380 at 783 (1969). However, where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken. See, e. g., Narragansett Tribe v. So. R. I. Land Devel., 418 F.Supp. 798, 801-802 (D.R.I.1976).
*39 By framing the question as whether it will be ultimately more time consuming to determine the applicability of the three defenses asserted by the United States before or after it is determined whether the land involved is sovereign trust land and whether State agents had knowledge of the United States' claim of title, it is clear that the latter would be more time consuming and burdensome to the Court. Thus, resolution of the State's motion to strike at this stage of the proceedings will have only beneficial effects. The briefs of the parties indicate that there are major disputed legal and factual issues that must be resolved before a determination can be made as to whether the land is sovereign trust land. Further, if the land is determined to be sovereign trust land, there are disputed legal and factual questions as to whether the State has retained its interest in the land. If the motion to strike is resolved at this time in favor of the United States, it is highly probable that the entire action will be disposed of by a motion for summary judgment by the United States on the grounds that the State is barred from asserting title to Base land because employees and attorneys of the State had knowledge of the claim of title by the United States. The Court would never be required to determine the sovereign trust character of the land or whether the State retained title to the land. If the motion is resolved in favor of the State, only then will the Court proceed with the issues of the sovereign trust character of the land and the State's interest in the land. It should be noted that if the land is determined not to be sovereign trust land, the issue of the applicability of the defenses would not again arise, because in such a case the State would have retained no interest in the land. Thus, under either result the proceedings are simplified by deciding the legal issue of the availability of the three defenses prior to resolving the more time consuming issues of the sovereign trust character of the land and the State's interest in the land. Moreover, it should be noted that the applicability of the three defenses to a state asserting title to sovereign trust lands is a legal question which does not depend for its resolution on a determination of whether facts exist to support an application of the defenses. Therefore, in conclusion, the Court considers it appropriate to address the merits of the State's motion to strike at this time.

Assumed Facts
On a motion to strike, the Court must treat as admitted all material factual allegations underlying the challenged defenses and all reasonable presumptions that can be drawn therefrom. Kohen v. H.S. Crocker Co., 260 F.2d 790, 792 (5th Cir. 1958); Narragansett Tribe, supra, 418 F.Supp. at 802. For purposes of this motion, the Court must assume that the State can prove its factual allegations at trial. Narrangansett Tribe, supra. Thus, to rule on the State's motion to strike, the Court must presume that the lands which are the subject of this lawsuit are sovereign trust lands and that the State retained an interest in these lands. It is quite apparent that these are major suppositions, but necessary ones to a ruling on the motion to strike.

The Sovereign Trust (or Public Trust) Lands Concept
Title to land which was covered by tidal waters (this land is called submerged tidelands) at the time the state was admitted to the Union is in the shoreline state. Thus California acquired title to all soils under the tidewaters within its limits when it was admitted to the Union. 43 U.S.C. §§ 1301(a), 1311. This principle was established by court-made law (see, Weber v. Harbor Comm'rs., 85 U.S. (18 Wall.) 57, 65-66, 21 L.Ed. 798 (1873)) until the Supreme Court determined title to submerged tidelands was in the United States in United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947). But in 1953, Congress overturned this decision by enacting the Submerged Lands Act, 43 U.S.C. §§ 1301 et seq., which placed title to submerged tidelands in the states from the date the state was admitted to the Union as an incidence of the state's sovereignty. Thus, there has been a return to prior legal doctrines. See State Land Board v. Corvallis *40 Sand & Gravel Co., 429 U.S. 363, 374, 97 S.Ct. 582, 584, 50 L.Ed.2d 550 (1977).
The land under tide waters has a special legal character. In Illinois Central Railroad v. Illinois, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892), the Supreme Court explained the nature of a state's title to submerged tidelands. The Court stated that title to soils under tide water is:
"a title different in character from that which the State holds in lands intended for sale. It is different from the title which the United States holds in public lands which are open to preemption and sale. It is a title held in trust for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein freed from the obstruction or interference of private parties." Illinois Central, supra, 146 U.S. at 452, 13 S.Ct. at 118.
Thus, submerged tidelands are held by the state in trust for the common use of the public as part of the inherent sovereignty of the people. Id. at 455, 459, 13 S.Ct. at 119, 120.
The State contends in the present case, and the Court must assume for purposes of the motion to strike, that the lands on which the Base was built were submerged tidelands when California was admitted to the Union, that as submerged tidelands the lands are sovereign trust lands held by the State in trust for its citizens, that the sovereign trust character of the lands was not lost by subsequent filling and development of the submerged tidelands and use by the United States, and that because the lands remained sovereign trust lands the State retained title to the lands and the lands must be returned to the State once use by the United States for military purposes has ceased. As to this motion to strike, the State's contention is that because the lands are still sovereign trust lands, the application of the equitable defenses of the statute of limitations, laches and estoppel are prohibited as an incidence of this special sovereign trust character of the lands.

Common Law Principles
It is a general legal principle that the equitable defenses of the statute of limitations, laches and estoppel cannot be asserted against a sovereign. In Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938), the Supreme Court explained that the rule that the sovereign is exempt from the consequences of its laches and from the operation of statutes of limitations originated as a "vestigial survival of the prerogative of the Crown." Guaranty Trust, supra, 304 U.S. at 132, 58 S.Ct. at 788. But the Court stated that the modern basis for the rule lies in the strong public policy underlying the rule, the rule resting on the public policy of protecting the sovereign from the omissions of its own officers and agents whose neglect, through lapse of time, would otherwise deprive the sovereign of valuable rights. Id. at 132, 141, 58 S.Ct. at 788, 793. The Court also pointed out that this application of the doctrine of sovereign immunity, that the sovereign cannot be deprived of rights through the application of equitable defenses, is applicable to the state sovereignties as well as to the national sovereign. Id. at 133, 58 S.Ct. at 789.
The public policy reasoning behind this application of the sovereign immunity doctrine (i. e., immunity from equitable defenses) is explained in United States v. Kirkpatrick, 22 U.S. (9 Wheat.) 720, 6 L.Ed. 199 (1824). In that case the Court discussed the general principle that laches is not imputable to the government. The Court reasoned that because a government can only transact its business through its agents, and because its operations are various and its agencies numerous and scattered, even "the utmost vigilance" would not save the public from the most serious losses if the doctrine of laches could be applied to the government's operations. U. S. v. Kirkpatrick, supra, 9 Wheat. at 735. Thus, equitable defenses are not available against a sovereign because rights of the public should not be lost through the negligence of the sovereign's agents.
*41 Modern times have seen the erosion of sovereign immunity in its various forms, including immunity from the equitable defenses of the statute of limitations, laches and estoppel. However, the immunity from equitable defenses doctrine has suffered no erosion where a sovereign asserts public trust rights. The United States cites the Court to the case of U. S. v. Georgia Pacific Co., 421 F.2d 92 (9th Cir. 1970), for the proposition that the immunity doctrine should not apply to the present case. That case does discuss the decline of the sovereign immunity doctrine, and permits the estoppel doctrine to run against the United States under the facts of that case. However, the Court explained in that case that equitable defenses are still not permitted to be asserted against a government acting in its sovereign capacity to preserve public land rights. In fact, the Court specifically directed its holding to the facts before it where the government was acting as a private party asserting private land rights. U. S. v. Georgia Pacific Co., supra, 421 F.2d at 100-101.
The rationale behind the rule that equitable defenses are not asserted against a sovereign acting in its sovereign capacity to preserve its interest in public trust land is well stated in Weber v. Harbor Commissioners, supra, 85 U.S. (18 Wall.) 57, 21 L.Ed. 798. In that case, the Supreme Court addressed the question of whether title to lands which a state holds in trust for the public may be lost by adverse possession. The Court held that "[w]here lands are held by the State simply for sale or other disposition, and not as sovereign in trust for the public, there is some reason in requiring the assertion of her rights within a limited period," but when statutes of limitation are to be applied against a state asserting title to public trust land, the state must be expressly designated by the statute as being embraced within the terms of the statute. Id. at 68, 70. The Court reasoned that statutes of limitation are founded upon a presumption that claims are not valid when they are allowed to remain neglected, and a presumption that the possession is founded upon right. Id. at 70. However, the Court stated that it is not proper to extend this presumption against the State "which acts through numerous agents, having no such incentive to prosecute her claims. The rule, therefore, with respect to her rights is that they are not lost or impaired by the negligence of her officers, a rule which has been found by experience essential to the preservation of the interests and property of the public." Id. at 70. Thus, the rule is that unless the state is expressly designated by the statute of limitation asserted to be subject to its terms, or if the state is necessarily included as subject to the statute by the nature of the mischiefs to be remedied, the statute of limitation cannot be asserted against a state claiming title to land held in trust for the public. Id.
In Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917), the Court discussed the general rule that estoppel on the part of officers of the government is no defense to a suit by the government to enforce a public right or protect a public interest. The Court explained that a suit by the United States "to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this respect ... from the ordinary private suit to regain the title to real property or to remove a cloud from it." Utah Power & Light Co., supra, 243 U.S. at 409, 37 S.Ct. at 391.
The most persuasive language addressing the question of the availability of equitable defenses against a sovereign asserting title to sovereign trust land is contained in the case of United States v. California, supra, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889. As discussed earlier, this was the case in which the Supreme Court held that the United States, and not the states, was the owner of submerged tidelands. This decision was overruled by Congress by enactment of the Submerged Lands Act which places title to tidal soil within the three-mile marginal belt along seaboards in the seaboard states. 43 U.S.C. § 1301 et seq. But another portion of the Supreme Court's opinion in United States v. California discusses the availability of equitable defenses *42 against a government asserting title to public trust lands. Interestingly, it was the State of California which asserted the equitable defenses against the United States, with the United States contending that the defenses were inapplicable because the United States was asserting its public trust interests in the submerged tidelands. Although the Submerged Lands Act provides that the seaboard states, and not the United States, have public trust interests in submerged tidelands, there is no indication that the reasoning of the Court as to the availability of equitable defenses against a sovereign asserting sovereign trust interests in land does not continue to be existing law.
In addressing California's assertion that the United States was barred from enforcing its rights to the submerged tidelands by reason of the conduct of its agents through the doctrines of laches, estoppel and adverse possession, the Supreme Court held:
"even assuming that Government agencies have been negligent in failing to recognize or assert the claims of the Government at an earlier date, the great interests of the Government in this ocean area are not to be forfeited as a result. The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act."

Id. at 39-40, 67 S.Ct. at 1668-1669.
For the identical reasons, the people of the State of California should not be deprived of sovereign trust lands by the negligence of officers who had no authority to dispose of the property.
The United States has not cited this Court to cases which would indicate that the general principle that equitable defenses are not available where a sovereign asserts title to sovereign trust lands should not be followed in the present case. Nor has the United States cited case authority that would indicate that this general rule is inapplicable where the federal government asserts the equitable defenses against a state. The Court, finding no reason to make exception, is of the opinion that the equitable defenses cannot be asserted by the United States against the State pursuant to this general principle.

California Law
The United States asserts that under state law the defense of estoppel is applicable to the present case, citing the California Supreme Court case of City of Long Beach v. Mansell, 3 Cal.3d 462, 91 Cal.Rptr. 23, 476 P.2d 423 (1970). This is the controlling California case governing the application of the estoppel doctrine against governmental entities. In this case the Court discussed state law interpretations of public trust land in determining title to tidelands in the Alamitos Bay area. The question of application of the estoppel doctrine arose in connection with the assertion that the City of Long Beach and the State of California should not be belatedly allowed to assert title to the tidelands, as this tardy assertion would result in a manifest injustice to those who relied on prior conduct of the city and state in filling and improving the lands for private use. City of Long Beach, supra, 3 Cal.3d at 488, 91 Cal.Rptr. 23, 476 P.2d 423. (Although the Court felt that the question of estoppel was not properly before it, it decided that the circumstances of the case rendered it appropriate to consider the estoppel matter to prevent future lengthy litigation).
The Court thoroughly discussed the doctrine of equitable estoppel and concluded that the elements of equitable estoppel were established by the facts of the case. Id. at 489-494, 91 Cal.Rptr. 23, 476 P.2d 423. The Court then addressed whether, even though an equitable estoppel was established, the doctrine could be applied to prevent the city and state from asserting paramount title to lands which the entities hold in trust for the people. Id. at 494, 91 Cal. *43 Rptr. 23, 476 P.2d 423. In making this determination, the Court stated the question before it as whether "the injustice which would result from a failure to raise an equitable estoppel against the city and state ... [was] of sufficient dimension to justify the effect upon public interest or policy which will result from the raising of such an estoppel." Id. at 500, 91 Cal.Rptr. 23, 476 P.2d 423. The Court found that manifest injustice would result to the thousands of citizens who had settled upon the lands with the expectation of being able to remain there if the estoppel doctrine were not applied against the city and state, and found that allowing the application of the estoppel doctrine would not have a significant deleterious effect upon the public interest because the area already had "an impressive array of public facilities for navigation and recreation." Id. at 500-501, 91 Cal.Rptr. 23, 476 P.2d 423. The Court particularly emphasized that the case before it involved a "rare combination of government conduct and extensive reliance" that "will create an extremely narrow precedent for application in future cases" (id. at 501, 91 Cal.Rptr. 23, 476 P.2d 423), the case being an "exceptional" one. Id. at 502, 91 Cal.Rptr. 23, 476 P.2d 423. Thus, the key requirement under California law for invoking the defense of equitable estoppel against the state where it asserts title to public trust lands is that a manifest injustice will result by failing to apply the estoppel doctrine, an injustice which outweighs the public interest or policy which usually requires that the estoppel doctrine not be applied against a sovereign.
In the present case, the injustice to the United States by failing to apply the estoppel doctrine against the State is that it will not be allowed to distribute property it has already declared to be surplus property that is to be disposed of. On the other side, the public interest of the citizens of California if the estoppel defense is not applied is the interest of the citizenry in having the State be possessed of the lands for use by the State in the public interest. Admittedly, the General Services Administration must give consideration to public concerns in disposing of surplus property, and the plan for distribution of this particular property includes public uses of the land. Thus, neither the injustice to the United States nor the public interest are particularly compelling. But certainly this is not the exceptional case of manifest injustice which is required under City of Long Beach to apply the estoppel defense against a state asserting title to public trust lands, and public rights will be violated if the estoppel defense were applied against the State. Therefore, California law does not compel the Court to apply the estoppel defense in the present case.

Application of the Specific Statute of Limitations to the State
Although the Court has concluded that the general rule that statutes of limitation will not be applied against a sovereign asserting title to sovereign trust land is applicable to the present case, the specific statute of limitations being asserted by the United States must be analyzed. As discussed earlier in this opinion, a sovereign asserting title to sovereign trust lands will be subject to the terms of a statute of limitation if the state is specified by the statute to be subject to its terms, or if the state is necessarily to be subject to the terms of the statute by the nature of the mischiefs to be remedied by the statute. See Weber v. Harbor Commissioners, supra, 85 U.S. (18 Wall.) at 70.
The State sued the United States pursuant to the federal statute by which the United States, through Congress, consented to be sued in actions to quiet title to land to which the United States claims an interest. 28 U.S.C. § 2409a. This statute provides its own statute of limitations for bringing an action. This subsection of the statute provides:
"Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should *44 have known of the claim of the United States." 28 U.S.C. § 2409a(f).
The text of the statute does not specifically state that states are subject to its limitation period. The legislative history to the statute (H.R.Rep.No.92-1559, reprinted in 1972 U.S.Code Cong. & Ad.News 4547) likewise makes no mention of the states, and in fact refers to "citizens" and "individual citizens." Id. at 4550, 4551. Thus, the statute does not specify that states are to be subject to its terms, nor is there any indication that the state is to be necessarily subject to the terms of the statute by the nature of the mischiefs to be remedied by the statute. Thus, pursuant to the general rule articulated in Weber v. Harbor Commissioners, supra, it would appear that the State is not subject to the statute of limitations set forth in 28 U.S.C. § 2409a(f).
However, in interpreting a statute of limitations applicable to lawsuits against the United States, an opposing general principle is encountered, that principle being that where the United States has given consent to sue, that consent must be strictly construed. See, e. g., Mann v. United States, 399 F.2d 672, 673 (9th Cir. 1968). Thus, the United States contends that states cannot be made exceptions to the application of the limitations period contained in section 2409a(f).
Case law applying this principle has allowed the assertion of the section 2409a(f) statute of limitations to bar a quiet title action by a city. Hart v. United States, 585 F.2d 1280, 1283-1285 (5th Cir. 1978), cert. den. 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). In support of its decision in Hart, the court stated that "[i]n granting the consent to sue, Congress has full latitude to impose such conditions as it sees fit" upon bringing suit against the United States, and so "[s]tatutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign." Hart v. United States, supra, 585 F.2d at 1284-1285. The Hart case, however, did not involve a question of title to public trust land, nor did the case deal with the issue of whether the statute of limitations could be asserted against a sovereign state.
In the case of Park County Assoc. v. U. S. A., 626 F.2d 718 (9th Cir. 1980), the Ninth Circuit applied the section 2409a(f) limitations period to counties. In that case certain counties of the State of Montana sued the United States to quiet title to an easement across lands in a national forest. The counties argued that the statute of limitations contained in section 2409a(f) was inapplicable to them because (1) they were political subdivisions of a state government and so were imbued with the sovereignty of the state, and (2) they were acting to protect public rights in public roads. Park County Assoc., supra, at 719. The Ninth Circuit affirmed the decision of the district court that the counties were not exempt from the limitations period of section 2409a(f). The court stated that it agreed with the district court's observation that the counties "failed to point to any statutory language or legislative history that would support the proposition that counties enjoy a status different from all other litigants under 28 U.S.C. § 2409a(f)." Id. at 720. The court also pointed out that federal statutes of limitation in a suit against the United States in a federal forum are "generally applicable to governmental entities as well as individuals." Id. at 720.
Though the court in Park County Assoc. stated that the lower court included in its opinion the statement that the court was not at liberty to draft exceptions to the requirements of section 2409a(f) because Congress's consent to sue must be strictly construed and that section 2409a(f) is jurisdictional (see Park County, Montana v. United States, 454 F.Supp. 1, 2-3 (D.Mont. 1978)), the Ninth Circuit did not make this a part of its reasoning in making the decision to affirm the decision of the lower court. Park County Assoc., supra, at 719.
There are no cases that have applied the section 2409a(f) statute of limitations to a state seeking to quiet title to land, and no cases that directly address the applicability of section 2409a(f) to title disputes involving public trust lands. Though "public *45 rights" were asserted by the plaintiffs in the Park County cases as requiring exception to the statute, neither court dealt with this ground for an exception to the statute, and rights of the public in roadways is clearly not as strong a public interest as is its interest in sovereign trust land. Thus, the Hart and the two Park County cases[1] are clearly distinguishable because in none of these cases was a state asserting its title rights to land held in trust for the public. Thus, the Court finds that these cases are not controlling in the present case.
This Court finds the real problem before it to be a conflict between sovereign immunity doctrines. The rule that the United States' consent to sue must be strictly interpreted and exception cannot be made is a sovereign immunity doctrine. Likewise, the rule that a sovereign is exempt from the defenses of the statute of limitations, laches and estoppel, especially when the sovereign is asserting title to public trust land, is a sovereign immunity doctrine. Generally, the two doctrines coexist and complement one another. But in the present case we are faced with the unusual case where the two doctrines cannot both prevail as application of each would lead to conflicting results, which would occur only when two separate sovereigns are on opposing sides of a lawsuit. Thus, the Court must decide which sovereign immunity doctrine shall prevail, the doctrine that no exception can be made to the consent to sue by the United States, or the doctrine that a sovereign asserting title to sovereign trust lands is exempt from the defenses of the statute of limitations, laches and estoppel unless the statute specifies that the sovereign is subject to its terms.
The Court is of the opinion that the latter doctrine must prevail in the present case. Section 2409a(f) should not be interpreted to foreclose the right of a state to assert title to sovereign trust lands. If title to lands held by the United States rightfully belongs in the citizens of a state for their public use, Congress should not be allowed to limit the State from recovering such lands. A different interpretation would present serious Tenth Amendment constitutional problems because the federal government would be infringing upon an important sovereign characteristic of the state, that characteristic being that as part of its sovereignty the state holds certain lands in trust for the use and benefit of its citizens. A statute of limitations enacted by Congress should not be applied where it would deprive a state of public trust land.
Though no cases interpreting the Tenth Amendment have addressed a comparable situation to the present case, the Court follows the general principle that it must interpret statutes to avoid constitutional difficulties. Therefore, because of the above-mentioned constitutional considerations, and because of the great public interest in not permitting a sovereign to be foreclosed by statutes of limitation from asserting title to sovereign trust lands, the Court will apply the general rule, that sovereigns asserting title to public trust lands are exempt from statutes of limitation unless the statute specifically provides that the sovereign is to be subject to its terms, to section 2409a(f). As section 2409a(f) does not by its language or through its legislative history make the State subject to its terms, the Court holds that section 2409a(f) does not bar the State in the present case from bringing its quiet title action.

Conclusion on Motion to Strike
For all of the above reasons, the Court holds that the equitable defenses of the statute of limitation, laches and estoppel are not available to the United States to preclude the State from bringing this quiet *46 title action to recover sovereign trust lands. Thus, the Court grants the State's motion to strike the three affirmative defenses.

Motion for Reconsideration of the Magistrate's Ruling
As part of the discovery process, the United States sought 65 documents contained in the files of the State Lands Commission. Presently, only 60 documents remain in dispute. The United States contends that these documents would show that employees and attorneys for the State knew of the United States' claim of title to the property for at least twenty years hence. The documents were ordered to be produced by the Magistrate over the State's claim that the documents were privileged as work product and as communications between attorney and client.
As these documents were sought to assist the United States in its assertion of the defenses of the statute of limitations, laches and estoppel, and as these defenses have now been stricken by the Court, the United States no longer has need for these documents. What other information the United States asserts it can obtain from these documents can be ascertained through other means. Thus, the Court grants the motion for reconsideration of the Magistrate's ruling, sets aside the order of the Magistrate to produce the documents, and denies the United States' motion to produce the documents.

Order
Good cause appearing therefor, IT IS HEREBY ORDERED that plaintiff State of California's motion to strike the affirmative defenses of the statute of limitations, laches and estoppel is granted. Further, plaintiff's motion for reconsideration of the Magistrate's ruling is granted. The Court hereby sets aside the order of the Magistrate for production of the documents and denies defendant United States' motion for production of the documents.
NOTES
[*] References to "sovereign trust lands" or "public trust lands" have identical meaning in this opinion.
[1] Although the Ninth Circuit framed the issue before it as whether a state or other governmental entity is exempt from the statute, in its opinion the court only addressed the applicability of the statute to the counties, and never returned to discuss the possibility that the statute applied to a state. Even if the decision were to be so interpreted, the decision never addressed the applicability of the statute to a state asserting title to public trust lands, a crucial additional factor to a decision on the applicability of the statute in the present case.