671 F.2d 271
 The STATE OF NORTH DAKOTA, ex rel. BOARD OF UNIVERSITY AND
SCHOOL LANDS, Appellee,
v.
Cecil ANDRUS, Secretary of the Interior; Bob Bergland,
Secretary of Agriculture; Frank Gregg, Director of the
United States Bureau of Land Management; and John R.
McGuire, Chief of the United States Forest Service, Appellants.
The STATE OF NORTH DAKOTA, ex rel. BOARD OF UNIVERSITY AND
SCHOOL LANDS, Appellant,
v.
Cecil ANDRUS, Secretary of the Interior; Bob Bergland,
Secretary of Agriculture; Frank Gregg, Director of the
United States Bureau of Land Management; and John R.
McGuire, Chief of the United States Forest Service, Appellees.
 Nos. 81-1441, 81-1486.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1981.
Decided Feb. 12, 1982.
 
 1
 State of North Dakota, Robert O. Wefald, Atty. Gen., John W. Morrison, Owen L. Anderson (argued), Asst. Attys. Gen., Bismarck, N. D., for appellee/cross appellant.
 
 
 2
 James R. Britton, U. S. Atty., Fargo, N. D., Carol E. Dinkins, Asst. Atty. Gen., Lands Div. (argued), and Jacques B. Gelin, Edward J. Shawaker, Attys., Dept. of Justice, Washington, D. C., for appellants/cross appellees.
 
 
 3
 George Deukmejian, Atty. Gen., State of Cal., N. Gregory Taylor, Asst. Atty. Gen., Bruce S. Flushman, Linus Masouredis, Joseph J. Barbieri, Deputy Attys. Gen., San Francisco, Cal., for amicus curiae State of Cal., ex rel. State Lands Commission.
 
 
 4
 Before GIBSON, Senior Circuit Judge, BRIGHT, Circuit Judge, and LARSON,* Senior District Judge.
 
 
 5
 LARSON, Senior District Judge.
 
 
 6
 The Secretary of the Interior, et al., appeal from the judgment of the district court, State of North Dakota, ex rel. Board of University and School Lands v. Andrus, 506 F.Supp. 619 (D.N.D.1981),[1] holding that the Little Missouri River in North Dakota was navigable in fact on the date of North Dakota's statehood, and hence that title to the bed of the stream originally vested with the State of North Dakota under the equal footing doctrine and the Submerged Lands Act, § 3, 43 U.S.C. § 1311 (1976). We affirm.
 
 
 7
 The Little Missouri River has its source in the northeastern corner of Wyoming. It flows northward through the southeast corner of Montana, the northwest corner of South Dakota, and the badlands of western North Dakota. It joins the Missouri River in west central North Dakota. The Board of University and School Lands of the State of North Dakota commenced this suit on October 31, 1978, to prevent the federal government from issuing oil and gas leases on the bed of the Little Missouri River in North Dakota. The federal government has issued such leases since at least 1955.
 
 
 8
 The parties agree that the State of North Dakota was originally vested with title to land under waters that were navigable on October 1, 1889, the date of statehood.[2] At a one day trial the State presented documentary evidence on the historical and current status of the waterway. There was evidence of canoe travel prior to statehood, an effort to float logs down the river shortly after North Dakota became a state, present-day recreational canoe traffic, and other small craft usage over the years. The evidence suggested that the possibility of travel in both historical and contemporary times has depended on the water level and the season of the year, and that some sections have been extremely difficult to negotiate due to rapids and other obstructions. The federal government did not present any evidence on navigability; the Department of Justice only presented evidence on notice for statute of limitations purposes. The district court found that it was entitled to hear the matter as a quiet title action under 28 U.S.C. § 2409a (1976), that the twelve year statute of limitations in section 2409a(f) did not bar the suit even though the United States claimed that the State knew of the federal leases as early as 1955, and that there was sufficient evidence to find that the river was navigable as of statehood.[3]
 
 
 9
 The federal government appeals, arguing that the statute of limitations in section 2409a(f) applies in this action and that, at any rate, the State's evidence demonstrates that the Little Missouri was not navigable. The State cross appeals, maintaining that even if the appellate court finds that the statute of limitations precludes suit under section 2409a, the district court erred in ruling that there was no jurisdiction under the federal question provision, 28 U.S.C. § 1331 (1976), for the State's original complaint. Rather than requesting the court to quiet title, the State originally asked for a declaration that the river is navigable and an Order for the defendants to cease developing the bed of the river. The State of California, through its State Lands Commission, has submitted an amicus curiae brief in these appeals opposing the position of the federal government and supporting the State of North Dakota.
 
 Statute of Limitations
 
 10
 Congress waived sovereign immunity for quiet title actions in section 2409a. This statute provides:
 
 
 11
 The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. 28 U.S.C. § 2409a(a). ([4]
 
 
 12
 A statute of limitations for actions under section 2409a is found in 28 U.S.C. § 2409a(f):
 
 
 13
 Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.
 
 
 14
 The federal government argues that this statute of limitations bars the instant action, while the district court found and the State argues that section 2409a(f) does not apply to a claim by a sovereign to public trust lands.
 
 
 15
 Under the rule quod nullum tempus occurrit regi the defenses of statute of limitations and laches cannot be asserted against a sovereign. Guaranty Trust Co. v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). Although this rule developed in England as a royal prerogative, it is supported in modern law by the policy judgment that the public should not suffer because of the negligence of its officers and agents. Id. A statute of limitations will only apply to a sovereign when the statute expressly designates the sovereign or when the sovereign must necessarily be subject to the statute as determined by legislative intent. See, e.g., id. at 133, 58 S.Ct. at 789; Weber v. Board of Harbor Comm'rs, 85 U.S. (18 Wall.) 57, 70, 21 L.Ed. 798 (1873).
 
 
 16
 In the present suit North Dakota is asserting title to lands which would be public trust lands if held by the State.[5] Public trust lands are held in trust for the citizens of a state and they are distinguished from lands which the State holds in a proprietary capacity. Title to public trust lands is a basic attribute of state sovereignty. See, e.g., United States v. Mission Rock Co., 189 U.S. 391, 404, 23 S.Ct. 606, 608, 47 L.Ed. 865 (1903); Shively v. Bowlby, 152 U.S. 1, 49, 14 S.Ct. 548, 566, 38 L.Ed. 331 (1894). Rather than arising under congressional grant, title to public trust lands is vested in the states by the Constitution. Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 374, 97 S.Ct. 582, 588, 50 L.Ed.2d 550 (1977).
 
 
 17
 The alleged public trust character of the lands that are the subject of this suit has special implications for the applicability of the section 2409a(f) statute of limitations. In Weber v. Board of Harbor Comm'rs the Supreme Court addressed the issue of title to submerged public trust lands. In the course of its discussion the Court noted: "(s)tatutes of limitation are not ... held to embrace the State, unless she is expressly designated, or necessarily included by the nature of the mischiefs to be remedied." 85 U.S. at 70. Also of significance here is the more recent case of United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), in which the Court held that laches, estoppel, and adverse possession did not preclude the United States from asserting title to submerged public trust lands. Id. at 39-40, 67 S.Ct. at 1668. The Court went on to hold that the federal government had title in certain submerged tidelands. Id. at 41. Although Congress effectively overruled the Court in its adoption of the Submerged Lands Act, 43 U.S.C. §§ 1301, et seq., the principle that equitable defenses do not bar a sovereign from asserting its title to public trust lands applies just as strongly to the State of North Dakota in the present dispute as it did to the United States in United States v. California.
 
 
 18
 The statute of limitations in section 2409a(f) does not expressly mention actions by states, nor does the legislative history provide any support whatsoever for the proposition that Congress intended section 2409a(f) to apply to actions such as the case at bar. The House Report for section 2409a(f) refers to "persons," "citizens," and "individual citizens,"[6] but nowhere does it mention "states."[7] H.R.Rep.No.92-1559, reprinted in (1972) U.S.Code Cong. & Ad.News 4547, 4547-52. In addressing the liability of states for civil rights violations under 42 U.S.C. § 1983 (1976) to states, the Supreme Court noted the absence of reference to states in the legislative history and said: "(w)e can only conclude that this silence on the matter is itself a significant indication of the legislative intent." Quern v. Jordan, 440 U.S. 332, 343, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979).
 
 
 19
 It might be argued in response that even if the legislative history does not explicitly mention states, the general purpose of the statute of limitations in barring stale claims would not be served if states are exempted. In light of the relatively recent adoption of the Submerged Lands Act in 1953, however, it is difficult to argue that Congress would consider a claim by a state to public trust lands stale. The effect of the Submerged Lands Act was to reaffirm the title of the states to lands beneath navigable waters at statehood. State of California ex rel. State Lands Comm'n v. United States, 512 F.Supp. 36, 39-40 (N.D.Cal.1981). Insofar as the impetus for the enactment of the quiet title statute in section 2409a was a dispute between private landowners, California v. Arizona, 440 U.S. 59, 67 n.7, 99 S.Ct. 919, 924 n.7, 59 L.Ed.2d 144 (1979), it is further apparent that the concern of Congress in enacting the section 2409a(f) statute of limitations was with the stale claims of private landowners, not states.
 
 
 20
 The federal government's primary argument for the application of section 2409a(f) to states is that the statute refers to "(a )ny civil action" (emphasis added), and that this language must necessarily include actions by states. The federal government also notes that the United States has consented to be sued under section 2409a, and cites the principle that any restrictions which a sovereign places on its consent to be sued, such as a statute of limitations, must be strictly construed. See, e.g., United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980); Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).
 
 
 21
 As the court in State of California ex rel. State Lands Comm'n v. United States, 512 F.Supp. at 36, aptly noted, the issue here is "a conflict between sovereign immunity doctrines." On the one hand there is the principle that a sovereign (North Dakota) should not be subject to equitable defenses such as a statute of limitations unless expressly included. On the other hand there is the principle that the consent of a sovereign (the United States) to waive sovereign immunity should be strictly construed. The court in State of California ex rel. State Lands Comm'n v. United States resolved this conflict for the state. Id. We believe that this is appropriate in the present case as well because the interest of the people of the State of North Dakota in quieting title to public trust lands is great and because the United States Congress has the option of adding an express reference to states in section 2409a(f) if it wishes the statute of limitations to apply to actions such as the present one.[8]
 
 
 22
 The federal government has cited a number of decisions in the present case which it claims provide support for applying the statute of limitations. See Nevada v. United States, 628 F.2d 1357 (9th Cir. 1980), cert. denied, 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981); Park County, Montana v. United States, 626 F.2d 718 (9th Cir. 1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981); Hart v. United States, 585 F.2d 1280 (5th Cir. 1978), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). In our view these three cases are all distinguishable or otherwise defective as authority. Briefly, State of Nevada has the status of a "Memorandum" and it has not been published. Under Rule 21(c) of the United States Court of Appeals for the Ninth Circuit "(a) disposition which is not for publication shall not be regarded as precedent and shall not be cited to or by this Court or any district court of the Ninth Circuit either in briefs, oral argument, opinions, memoranda, or orders, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel." Moreover, Rule 8(i) of this Court provides:
 
 
 23
 No party may cite an opinion that was not intended for publication by this or any federal or state court, except when the cases are related by virtue of an identity between the parties or the causes of action.
 
 
 24
 Thus, State of Nevada is without precedential value in this Court. Even if the decision could be cited as authority, it is apparent that the applicability of section 2409a(f) to an action by a state was not really litigated because the court said that the state did not contest this point. See slip op. at 2. Park County, Montana is distinguished in that it was brought by a county, not a state. A county is the mere creature of a state and does not have the same status as a sovereign. Further, the court did not consider the public trust lands concept. The public plaintiff in Hart was a city, and thus this case is distinguished on similar grounds.
 
 
 25
 In sum, we find that there is a basis both in policy and precedent for affirming the district court in its finding that the statute of limitations in section 2409a(f) does not apply to an action by a state to quiet title to public trust lands. Because we find that the statute of limitations is inapplicable in the present case, we need not address the federal government's argument that the State received notice within the limitation period, nor need we consider the State's cross appeal arguing that an alternative basis for jurisdiction can be premised upon 28 U.S.C. § 1331.
 
 Navigability
 
 26
 If the Little Missouri was navigable upon the date of North Dakota's admission to the union, then title to the bed of the waterway vested in the State at that time. In Martin v. Waddell, 41 U.S. (16 Pet.) 367, 410, 10 L.Ed. 997 (1842), the Supreme Court held that after the American Revolution title beneath navigable waters passed to the original 13 states. In Pollard v. Hagan, 44 U.S. (3 How.) 212, 228-29, 11 L.Ed. 565 (1845), the Court held that under the equal footing doctrine subsequently admitted states have the same rights to lands beneath navigable waters. Accord, Shively v. Bowlby, 152 U.S. at 26, 14 S.Ct. at 557. The equal footing doctrine provides that states admitted after the first 13 have the same rights of sovereignty, jurisdiction, and absolute title over sovereign lands as their predecessors. As noted above, Congress reaffirmed original title of the states to lands beneath navigable waters in the Submerged Lands Act, 42 U.S.C. § 1311. The Supreme Court has recently applied this principle in Montana v. United States, 450 U.S. 544, 551, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), and Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. at 374, 97 S.Ct. at 588.
 
 
 27
 The legal standards on navigability have developed over a long line of cases. In The Daniel Ball, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870), the Supreme Court set forth what has become the basic standard:
 
 
 28
 Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.
 
 
 29
 In The Montello, 87 U.S. (20 Wall.) 430, 441, 22 L.Ed. 391 (1874), the Court elaborated, stating that "the true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor on the difficulties attending navigation." The Court also stated that "(i)t would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway." Id. The Court cautioned, however, that:
 
 
 30
 It is not ... "every small creek in which a fishing skiff or gunning canoe can be made to float at high water which is deemed navigable, but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture." Id. at 442.
 
 
 31
 The focus on commerce does not require that the waterway be clear of obstructions or easily traveled throughout the entire year. As the Court said in Economy Light & Power Co. v. United States, 256 U.S. 113, 122, 41 S.Ct. 409, 412, 65 L.Ed. 847 (1921), "(n)avigability, in the sense of the law, is not destroyed because the watercourse is interrupted by occasionally natural obstructions or portages; nor need the navigation be open at all seasons of the year, or at all stages of the water." In Utah v. United States, 403 U.S. 9, 10, 12, 91 S.Ct. 1775, 1775, 1776, 29 L.Ed.2d 279 (1971), a case concerned with the claim of the State of Utah to the bed of the Great Salt Lake under the equal footing doctrine, the Supreme Court cited the above quoted passage from The Daniel Ball and upon review of the facts concluded that the lake was navigable. As the Court said, "(t)he lake was used as a highway and that is the gist of the federal test." 403 U.S. at 11.
 
 
 32
 The district court in the present case drew upon Utah v. United States for its definition of navigability. 506 F.Supp. at 622. In support of its conclusion that the Little Missouri was navigable as of statehood, the district court recounted a number of facts from the documentary evidence introduced by the State at trial. The district court noted that in 1804 one Baptiste Le Page made a canoe journey from the Black Hills down the Little Missouri to join the Corps of Discovery. Meriweather Lewis discussed the journey with Le Page and wrote of the river after viewing its mouth:
 
 
 33
 The Little Missouri disembogues on the S. side of the Missouri 1693 miles from the confluence of the latter with the Mississippi, it is 134 yards wide at it's mouth, and sets in with a bould current but it's greatest debth is not more than 21/2 feet. It's navigation is extremly difficult, owing to its rapidity, shoals and sand bars it may however be navigated with small canoes a considerable distance. This river passes through the Northern extremity of the black hills where it is very narrow and rapid and it's banks high an(d) perpendicular. it takes it's rise in a broken country West of the Black hills with the waters of the yellow stone river, and a considerable distance S.W. of the point at which it passes the black hills. 1 Lewis and Clark Journals 298 (Thwaites ed.). (emphasis added).[9]
 
 
 34
 The district court next noted that there was an effort to float logs down the stream just after statehood in 1881 and 1882 by one Eber H. Bly, and that the river currently carries about 200 recreational canoes per year. In a footnote, 506 F.Supp. at 623 n.6, the court also quoted a 1975 United States Corps of Engineers report which states: "(d)ue to historical and potential use, it is recommended that the Little Missouri River be classified as a navigable waterway of the United States." United States Corps of Engineers, Little Missouri River Navigability Study 18 (1975).
 
 
 35
 In addition to the evidence cited by the trial court, there was other documentary evidence in the record bearing on navigability. There were reports of a number of other instances of small boat usage as well as general information on water level and obstructions in the stream. Most importantly, the evidence suggested that the water level and hence the passability of the river depends on the season of the year. The water tends to be high during spring flood periods, at times quite low in the summer, and, of course, frozen during the winter.
 
 
 36
 Although we feel that the evidence in the record concerning navigability is rather thin, we will still affirm the district court. The legal standards on navigability are liberal, and we must bear in mind that the issue is one of potential commercial use and hence navigability at the time of statehood, not in the present day. In this sense, our decision in George v. Beavark, Inc., 402 F.2d 977 (8th Cir. 1968), is clearly distinguished. In George, the only use of the stream that this Court found significant was float fishing in hand propelled boats that drew from two to six inches of water. This Court ruled the stream non-navigable and hence not within admiralty jurisdiction. In Livingston v. United States, 627 F.2d 165, 169-70 (8th Cir. 1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981), this Court assessed George and noted that the test of navigability that is employed must be determined by the purpose for which navigability is being assessed, whether for admiralty jurisdiction, land claims, or for some other reason. Turning to the question of what constitutes navigability for admiralty jurisdiction, this Court said that "the concept of 'navigability' in admiralty is properly limited to describing a present capability of waters to sustain commercial shipping." Id. (emphasis added). George is thus distinguished from the instant case in that the standard of present-day commercial use was employed rather than the potential for commerce at a date in the distant past. Although recreational float fishing of the sort involved in George is certainly not commercial shipping in modern terms, canoe travel at the time of North Dakota's statehood represented a viable means of transporting persons and goods.
 
 
 37
 The district court is affirmed on the appeal by Cecil Andrus and other officials of the United States as appellants (No. 81-1441), and the district court is affirmed on the appeal by the State of North Dakota (No. 81-1486).
 
 
 
 *
 Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota
 
 
 [2]
 The federal government's assertion of title is based on its status as a riparian landowner
 
 
 [3]
 The Three Affiliated Tribes were not represented in the litigation. Recognizing the interest of the Tribes in the bed of the river within and bordering the Fort Berthold Reservation, the district court stated that any orders shall have no effect on the bed of the Little Missouri River below the west line of Lot 10, Section 34, Township 148 North, Range 95 West
 
 
 [4]
 Under 28 U.S.C. § 1346(f) (1976), the district courts have original jurisdiction over actions brought pursuant to 28 U.S.C. § 2409a (1976)
 
 
 [5]
 The Supreme Court of North Dakota has held that State lands beneath navigable waters are held in trust for the public. United Plainsmen Assoc. v. North Dakota State Water Conservation Comm'n, 247 N.W.2d 457, 461 (N.D.1976)
 
 
 [6]
 In a different although still relevant situation the Supreme Court stated:
 "(I)n common usage, the term 'person' does not include the sovereign (and) statutes employing the phrase are ordinarily construed to exclude it." ... Particularly is this true where the statute imposes a burden or limitation, as distinguished from conferring a benefit or advantage. Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979).
 
 
 [7]
 At one point the House Report says of the statute of limitations that "the period is fixed in this manner so that the Government will not have to defend against state claims." H.R.Rep.No.92-1559, reprinted in (1972) U.S.Code Cong. & Ad.News 4547, 4550 (emphasis added). It is apparent from the context, however, that this was a typographical error and that the word "stale" should have appeared rather than "state." The court in Hatter v. United States, 402 F.Supp. 1192 (E.D.Cal.1975) has also recognized that this was a typographical error and that the proper word was "stale." See id. at 1194
 
 
 [8]
 The court in State of California ex rel. State Lands Commission v. United States, 512 F.Supp. 36, 45 (N.D.Cal.1981), suggested that there would be a problem under the Tenth Amendment to the United States Constitution if the statute of limitations were applied to the states "because the federal government would be infringing upon an important sovereign characteristic of the state, that characteristic being that as part of its sovereignty the state holds certain lands in trust for the use and benefit of its citizens. A statute of limitations enacted by Congress should not be applied where it would deprive a state of public trust land." In the present case the State of North Dakota offered a similar argument, but the district court ruled that "since the matter is resolvable without reaching the constitutional issue, that claim is not here discussed." 506 F.Supp. at 626. We are also of the opinion that it is not necessary to reach the Tenth Amendment claim and that this matter would be better taken up at a later time when it has been more thoroughly briefed. We note in dictum, however, that the argument for a constitutional prohibition on the application of a statute of limitations to actions by states under 28 U.S.C. § 2409a (1976) seems problematic to us. As we have said above, by enacting section 2409a the United States voluntarily waived its sovereign immunity from suit. We are not convinced that there can be a constitutional objection to the federal government's placement of a limit on the extent to which it will give up its immunity
 
 
 [9]
 Clark wrote on the same day: "(o)ne of our men, Baptiste, who came down the river in a canoe, informs me that it is not navigable. He was 45 days descending." 1 Lewis and Clark Journals 300 (Thwaites ed.). The district court reproduced this quotation and commented: "(b)ut of course he did navigate it, and late in the fall when the river is at its very lowest." 506 F.Supp. at 619 n.23. At oral argument counsel for the State of North Dakota maintained that this quotation from Clark might best be understood in light of the fact that Lewis and Clark were traveling by keelboat. Although the stream was passable by Le Page in his canoe, counsel suggested it could not have been negotiated in a keelboat