**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edgar TIMMONS, Jr., the group known as People Organized for Equal Rights, and other unknown individuals, Defendants-Appellants.**

No. 80–7860.

United States Court of Appeals,
Eleventh Circuit.

April 12, 1982.

---

Jack Greenberg, Bill Lann Lee, Eric Schnapper, New York City, for defendants-appellants.

James W. Moorman, Asst. Atty. Gen., Jacques B. Gelin, James C. Kilbourne, Attys., Kathryn A. Oberly, Susan Virginia Cook, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before MORGAN, KRAVITCH and HENDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This controversy comes before us framed as an action for ejectment brought by the United States against various individuals[1] claiming ownership of land in Harris Neck Wildlife Refuge. Defendants answered asserting through numerous defenses and counterclaims that the United States had improperly acquired the property in 1943 from defendants' ancestors. It was further alleged that after 1948 defendants' ancestors had been illegally prevented from reacquiring the property pursuant to the Surplus Property Act of 1944, Pub.L. No. 457, 58 Stat. 765 (1944). The district court, on plaintiff's motion, dismissed all counterclaims and granted the United States summary judgment, finding that defendants' contentions were insufficient as a matter of law, barred by the applicable statutes of limitations or precluded by the doctrine of *res judicata*. Defendants were then permanently enjoined from further attempts to settle on Harris Neck Island. We have carefully reviewed the record before us and for the reasons stated below conclude that the district court's orders must be affirmed.

I

The historical background of Harris Neck as well as the immediate occurrences giving rise to the instant suit are essentially undisputed. The land now known as Harris Neck National Wildlife Refuge is situated among the chain of barrier islands and estuaries which form the coast of Georgia. At the time of the Civil War, the islands had become cotton and indigo plantations, cultivated by slaves. In 1865 the first of three Freedmen's Bureau Acts were passed by Congress[2] authorizing the leasing of small parcels of land to newly emancipated slaves and other Civil War refugees. At the expiration of the leases, the occupants were allowed to purchase the land. Among those former slaves who acquired land in this manner was the father of defendant Edgar Timmons, Jr.

For the next three-quarters of a century, Harris Neck was used by black occupants primarily for subsistence farming. Then in 1942 the United States instituted proceedings to condemn approximately 2700 acres of Harris Neck Island, including the tracts now in issue, for a wartime army airfield. The government filed declarations of taking on January 24, 1943, under 40 U.S.C. § 258a, but final condemnation judgments

---

1. Initially served as defendants were Edgar Timmons, Sonny Timmons, Chris McIntosh, Ted Clark, Baidn Sevron, James Campbell, and Louis Hutchinson.

2. Act of March 3, 1865, 13 Stat. 507; Act of July 16, 1866, 14 Stat. 173; and Act of July 6, 1868, 15 Stat. 83.

were not entered until January and February of 1948. *United States v. 1,200 Acres of Land in McIntosh County, Georgia,* Civ. No. 56 (S.D.Ga.1948).[3] Airport facilities were constructed on the acquired property and used during the war by the Third Army Fighter Command.

Following the end of the war, Harris Neck Airport and the surrounding land was declared unneeded property under the Surplus Property Act of 1944. The United States conveyed the land by quitclaim deed dated June 24, 1948, to McIntosh County, Georgia, on the condition that it be used as a municipal airport. The record strongly indicates, however, that the county never attempted to use the property for an airport. Accordingly, on April 25, 1961, a notice of reversion of Harris Neck property from McIntosh County to the United States was recorded. Harris Neck National Wildlife Refuge was then established by an act of Congress in 1962. Pub.Law No. 80–537.

On April 27, 1979, defendant Timmons and others entered the Harris Neck Refuge, set up unauthorized campsites and expressed their intention to remain indefinitely. These individuals claimed to be properly on the land as it belonged to the 1942 title holders or their descendants such as Timmons. The United States filed a complaint in ejectment on April 30 in the United States District Court for the Southern District of Georgia. Defendants answered raising five defenses and asserting, on behalf of themselves and those similarly situated, five parallel counterclaims. Each defense or counterclaim was based on at least one of the following allegations: (1) the land was condemned without providing timely notice and without adherence to other due process requirements; (2) black landowners were compensated at a rate far below the fair market value; (3) defendants and other landowners were dissimilarly treated on the basis of race in violation of the Fifth Amendment; (4) an agent of the United States fraudulently assured black landowners at the time of taking that their lands would be returned after the war; and (5) from the time the property was declared surplus until it reverted from McIntosh County, the United States acted to deprive defendants of their civil rights in violation of the due process clause of the Fifth Amendment and 42 U.S.C. §§ 1981 and 1982.[4]

Plaintiff did not reply but moved for dismissal of defendants' counterclaims and for summary judgment. After extensive briefing by the parties, the district court on June 23, 1980, granted both of plaintiff's motions but allowed defendants twenty days to bring to the court's attention any issues not addressed by the order. Defendants then moved for leave to file an amended answer adding claims that McIntosh County officials had engaged in a civil rights conspiracy against defendants and that Congress, in passing the Freedmen's Bureau Acts, meant to permanently dedicate Harris Neck to farming activities by ex-slaves and their descendants. Defendants further requested the joinder of McIntosh County officials as additional parties. The court denied these motions, and on August 25, 1980, a final order was entered

---

**3.** Nine final judgments were entered: one dated January 29, 1948, two dated January 30, 1948, one dated January 31, 1948, and five dated February 27, 1948.

No explanation for the delay in entry of judgment is contained in the record. During oral argument counsel for the United States hypothesized that the delay was merely due to oversight. In any case, title to land obtained by condemnation vests in the United States upon the filing of a declaration of taking and the deposit into the court of the amount of estimated compensation stated in the declaration. 40 U.S.C. § 258a.

**4.** As to each counterclaim, defendants request either a reconveyance of the property or damages amounting to the difference between the price paid defendants for the property and its fair market value at the time of taking. It is doubtful that reconveyance of the property is an available remedy under the allegations made in defendants' pleadings. *See Higginson v. United States,* 384 F.2d 504 (6th Cir. 1967), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1034, 19 L.Ed.2d 1137, *reh. denied,* 391 U.S. 961, 88 S.Ct. 1834, 20 L.Ed.2d 875 (1968). We are not required, however, to address this issue, because the instant appeal can be completely disposed of on other grounds.

granting plaintiff judgment for ejectment against defendants.

On appeal defendants argue that the lower court's dismissal of counterclaims and grant of summary judgment were improper as to three of its theories of relief: first, that the original condemnation judgment is void for failing to accord condemnees certain essential elements of due process; second, that the condemnation judgment transferring title to the United States is subject to attack through an independent action in equity due to plaintiff's fraudulent and discriminatory practices durings its procurement; and third, that counterclaims based on violations of sections 1981 and 1982 of the Civil Rights Act as well as the Fifth Amendment (*Bivens* action) are not barred by the applicable statutes of limitations. Finally, defendants argue that the court below should have granted their motions to join additional parties and to add counterclaims.

## II

Defendants' first contention on appeal is that the trial court "simply ignored" claims that the original condemnation judgments were void for failure to accord black owners notice and opportunity to be heard. At oral argument defendants' counsel explained that this omission by the court was based on the belief that the issue had to be raised in a direct attack on the original judgment. Defendants therefore frame the first issue on appeal in terms of whether the district court erred in refusing to consider the notice issue. This issue is now inconsequential; for proceedings subsequent to the June 23 order preclude further consideration of whether service was timely made as well as whether the judgment was otherwise void.

After the circulation of the June 23 order but prior to the entry of final judgment, defendants[5] filed a motion in the original condemnation action requesting relief from judgment under Fed.R.Civ.P. 60(b)(4) and (6).[6] Defendants, in this direct attack, alleged that the 1948 judgments were void for the identical reasons alleged in the instant proceedings. On January 19 and June 29, 1981, the court issued two orders in *United States v. 1,200 Acres of Land in McIntosh County, Georgia*, Civ. No. 56 (S.D. Ga.1981), denying movant's requests for relief from judgment. The court found that on the face of the record the named movants or their ancestors had been properly served in 1942, that awards were made to movants or their ancestors in regard to the tracts in question, and that the condemnation judgments were not otherwise void. No timely appeal was taken from these orders.

■ It seems apparent that defendants' challenge to the condemnations is now barred under the doctrine of *res judicata*. This doctrine in part requires that

> [a]ny right, fact of matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not.

*In Re Constructors of Florida, Inc.*, 349 F.2d 595, 599 (5th Cir. 1965). Consistent with these principles we are bound by the deter-

---

**5.** The motions were filed by Edgar Timmons, the sole individual appellant, and Christopher McIntosh, Jesse Grant, Evelyn Greer and James Campbell, the only named individuals claiming in the record before us to be members of a class of former Harris Neck landowners or their heirs who were denied their property interests without due process of law.

**6.** These provisions of Rule 60(b) provide that "[o]n motion and upon such terms as are just,

the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(4) and (6). The district court rejected the challenge under Rule 60(b)(6) for not having been made within a reasonable time.

mination of a court in separate proceedings that service was perfected on the named defendants claiming an interest in Harris Neck or their ancestors and that due process was otherwise accorded.

■ Defendants argue that a judgment, rendered by a court without jurisdiction, is void and subject to collateral or direct attack. *Jones v. Watts,* 142 F.2d 575 (5th Cir. 1944); *Comprehensive Merchandising Catalogs, Inc. v. Madison Sales Corp.,* 521 F.2d 1210 (7th Cir. 1975); *see also McDonald v. Mabee,* 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917); *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877); *Thompson v. Whitman,* 18 Wall. 457, 21 L.Ed. 897 (1873). This authority is pertinent only where the issue of jurisdiction was neither litigated by the parties in the original action nor previously determined in independent proceedings. *See American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). It has been long decided that the principles of *res judicata* apply to questions of jurisdiction. *Baldwin v. Iowa State Traveling Men's Association,* 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). If a party puts the issue of personal jurisdiction before a court, which then finds that jurisdiction was properly established, that decision is conclusive unless reversed on direct appeal. *See American Surety Co. v. Baldwin,* 287 U.S. at 166, 53 S.Ct. at 101; *Baldwin v. Traveling Men's Association,* 283 U.S. at 527, 51 S.Ct. at 518; *Lambert v. Conrad,* 536 F.2d 1183 (7th Cir. 1976). Thus defendants' motion to reopen the original condemnation judgment placed the issue of service of process before a court of proper jurisdiction, and that court's unappealed determination, no matter how flawed, bars further assertions by defendants of inadequate notice. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Erspan v. Badgett,* 659 F.2d 26, 28 (5th Cir. 1981).

■ Defendants' second major contention on appeal is that the court below should have accorded a trial on defenses and counterclaims in the nature of an independent action in equity. A savings clause in Fed.R.Civ.P. 60(b) states that the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. . . ." The clause does not establish any new power in the courts, but merely "preserves the power as it was defined by 'established doctrine.'" *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.,* 213 F.2d 702, 706 (5th Cir. 1954). A court may accordingly entertain an independent action in equity for relief from judgment on the basis of its independent and substantive equitable jurisdiction. *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 78 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). That the United States is a party, however, raises additional issues of the district court's jurisdiction to hear defendants' claims.

■ The United States cannot be sued without its consent, *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), and this restriction applies whether the claim against it is asserted in the form of an original action or as a counterclaim. *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). Despite the apparent applicability of these principles in the instant suit, defendants curtly postulate that no jurisdictional problem exists for either of two reasons: the independent action was brought in the same court which rendered the original condemnation judgment, and the *principles* of an independent action are used "defensively." As to the former assertion, Professor Moore in his noted treatise on federal practice agrees that "such an independent action when brought in the court which rendered the judgment should be regarded as a continuation of the former action . . . that is maintainable against the United States with or without consent." 7 Moore's Federal Practice ¶ 60.38[1], at 644 (2d. ed. 1979). Regardless of what reasoning recommends this view, our acceptance of it is precluded by well aged Fifth Circuit authority to the contrary. In *Zegura v. United States,* 104 F.2d 34 (5th Cir. 1939), plaintiff had

brought a "bill of review" to reopen and readjudicate a prior action. The district court dismissed the "bill" after holding that it was without jurisdiction to entertain the suit against the United States. Zegura argued on appeal that his suit was ancillary to the judgment that he sought reviewed. The Fifth Circuit agreed that in some respects the attack upon the prior judgment was ancillary but then held, "[i]t still ... is not a part of the cause in which the decree was rendered, but a new suit, having for its object the correction of the decree in the former suit and requiring service of process as in any other original suit." 104 F.2d at 35. The court then affirmed the dismissal of the "bill of review," concluding that the independent action could not be brought against the United States without its authorization. This holding plainly precludes defendants' initial basis for arguing that the lower court has jurisdiction over counterclaims in the nature of an independent action in equity. *See also Jones v. Watts*, 142 F.2d 575 (5th Cir. 1944).

▮ We also reject defendants' assertion that the consent of the United States is not required because the *principles* of an independent action are asserted "defensively." Defendants presented their claims supporting equitable relief as both "defenses" and "counterclaims." Such designations do not control the treatment of a defendant's pleadings. *See* Fed.R.Civ.P. 8(c). In the context of determining jurisdiction, it cannot be considered a mere defense to claim that a prior judgment, while valid, should be denied enforcement. The nature of the defendants' attack, based on principles of an independent action, is that the judgment is "voidable" because of extrinsic fraud by

plaintiff[7] and not that judgment is void as being a result of fraud upon the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Because the instant suit was brought in the court which rendered the condemnation judgment, an affirmation of defendants' attack would effectively increase or otherwise alter the prior judgment.[8] *See* 7 Moore's Federal Practice ¶ 60.36, at 604 (2d ed. 1979). The result would be not a mere defeat of the United States' recovery but an award to defendants of affirmative relief. Hence defendants' claims must properly be treated as counterclaims and not defenses.

▮ As already noted the requirement that the United States consent to be sued applies to counterclaims. Waiver of immunity may occur, however, through the United States' institution of an action. As it has been succinctly stated by the former Fifth Circuit:

> [A] defendant is either compelled by [Fed.R.Civ.P.] 12(a) or permitted by 13(b), to counterclaim against the sovereign within the limits to which the sovereign immunity has been given up by the United States by other provisions of law. The waiver can be by statutory consent to be sued or by the institution of the particular action. Our conclusion is that when the sovereign sues it waives immunity as to the claims of the defendant which assert matters in recoupment—arising out of the same *transaction or occurrence* which is the subject matter of the government's suit, and to the extent of defeating the government's claim *but not to the extent of a judgment against the*

---

7. Defendants allege that in 1942 black condemnees relied on oral promises by an agent of the government that the land would be returned to them after the war. On appeal defendants do not, and indeed cannot, claim that such representations are binding on the United States government. *Harrison v. Phillips*, 185 F.Supp. 204 (S.D.Tex.1960), *aff'd*, 289 F.2d 927 (5th Cir. 1961), *cert. denied*, 368 U.S. 835, 82 S.Ct. 62, 7 L.Ed.2d 37 (1961). Their contention is instead that the representation caused black landowners not to contest the condemnation.

8. Even if suit had been brought in a different court affirmative relief would have been required. (This is not to intimate that such relief would have been available.) Mere refusal to enforce the condemnation judgment would not have affected the United States' title which became vested upon compliance with the requirements of 40 U.S.C. § 258a. See note 3 *infra; Covered Wagon, Inc. v. C.I.R.*, 369 F.2d 629 (8th Cir. 1966); *United States v. Sunset Cemetery Co.*, 132 F.2d 163 (7th Cir. 1942).

*government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims.* . . . [emphasis added].

*Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *United States v. Patterson*, 206 F.2d 345, 348 (5th Cir. 1953); *United States v. Hosteen Tsekesi*, 191 F.2d 518 (10th Cir. 1951). Defendants' counterclaims in the nature of an independent action in equity do not arise out of the same transaction or occurrence as plaintiff's claims, and affirmative relief is being sought. The United States by bringing this action in ejectment, therefore, has not waived its immunity as to defendants' counterclaims.

 Although not contested by defendants, we briefly note that the statute of limitations has expired on any arguably applicable express waiver of immunity. An action to adjudicate title to land in which the United States asserts an interest must be commenced within twelve years of the date the opposing claimant knew or should have known of the United States' claim. 28 U.S.C. § 2409a(f). Tort actions against the United States are subject to a two year statute of limitations, 28 U.S.C. § 2401(b), and any civil action is barred unless the complaint is filed within six years after the right first accrues. 28 U.S.C. § 2401(a). Under no interpretation of the facts before us can defendants' claim be considered timely. We conclude that the district court properly denied consideration of defendants' claims in the nature of an independent action in equity.

 The remaining contentions on appeal can be quickly rejected. Defendants argue that their claims based on violations of sections 1981 and 1982 of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, are not barred. We disagree. It is well established in this circuit that the United States has not waived its immunity to suit under the provisions of the civil rights statutes. *Unimex, Inc. v. United States Department of Housing and Urban Development*, 594 F.2d 1060 (5th Cir. 1979); *Penn v. Schlesinger*,

490 F.2d 700, 703 (5th Cir. 1973), *rev'd on other grounds*, 497 F.2d 970 (5th Cir. 1974) *en banc, cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972). Defendants' claims based directly on Fifth Amendment violations are likewise barred under the doctrine of sovereign immunity. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 410, 91 S.Ct. 1999, 2012, 29 L.Ed.2d 619 (1971) (J. Harlan concurring). We further conclude that the district court acted well within its discretion in denying joinder of McIntosh County and various county officials pursuant to Fed.R.Civ.P. 20(a). *Williams v. Hoyt*, 556 F.2d 1336 (5th Cir. 1977). The district judge appropriately considered that joinder would not serve the interests of judicial economy in view of the late stage of the proceedings and the lack of any disadvantage to the defendants in bringing their claims in a separate action. Finally, defendants' Rule 15(a) motion to add additional counterclaims was properly denied on grounds that amendment would be futile. *See DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1969).

Accordingly, the decision of the district court is

AFFIRMED.