**REVISED**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 95-60625

CHRIS W. BEGGERLY; JAMES R. BEGGERLY;
CLARK M. BEGGERLY; VELMA B. GARNER;
SUZANNE REED; DAVID REED,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Mississippi

July 28, 1997

<u>On Rehearing</u>

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

POLITZ, Chief Judge:

The panel substitutes the following for its opinion previously issued:

The Beggerlys appeal the district court's order granting the motion to dismiss by the United States and denying the Beggerlys' cross-motion for summary judgment in which they sought to vacate a consent judgment under which the United States acquired title to property previously held by the Beggerlys. Concluding that the Beggerlys are entitled to the relief sought, we reverse, render, and remand.

**BACKGROUND**

On April 3, 1950 Clark M. Beggerly, Sr., on behalf of his family, bought a portion of Horn Island, offshore in the Gulf of Mexico, at a tax sale in Jackson, Mississippi.  On January 8, 1971 Congress enacted legislation authorizing the Department of Interior to establish a federal park on lands that included Horn Island.[1]  In 1972 the National Park Service began negotiating with the Beggerlys for the purchase of their property on Horn Island.  In October 1975 the Beggerlys entered into a contract to sell the land to the government for $156,500.  Subsequently the government canceled the contract contending that because it had never issued a land patent, it was the title owner of Horn Island.

In 1979 the government brought a quiet title action in the Southern District of Mississippi against the Beggerlys and other defendants.  During discovery the Beggerlys sought proof of their title, and government officials ostensibly conducted a thorough search of the public land records.  The government then formally represented to the Beggerlys and the district court that no part of Horn Island had ever been granted to a private landowner and, as a result of these representations, in 1982 the government persuaded the Beggerlys to accept a settlement agreement it proposed.  The district court entered judgment based upon that agreement; the Beggerlys received $208,175.87 and title was quieted in favor of the United States.[2]

Their disappointment with the results of the settlement led the Beggerlys to

_____

[1] 16 U.S.C. § 459h.

[2] **United States v. Adams**, No. S79-0338(R) (S.D. Miss. Dec. 3, 1982).

mount an exhaustive search for a land patent to support their claim of title. They wrote letters to public officials, made Freedom of Information Act requests, and searched land records in Alabama, Mississippi, Louisiana, and Washington, D.C. Finally, in 1991 the Beggerlys hired a genealogical record specialist who conducted research in the National Archives and discovered the Boudreau Grant which supported the Beggerlys' claim of title. Government officials reportedly had searched the National Archives during the quiet title suit but had not discovered this document and thereafter erroneously advised the court and the Beggerlys that Horn Island had never been privately disposed. The Beggerlys contacted the Bureau of Land Management requesting the issuance of a land patent for Horn Island. The BLM summarily denied their request.

The Beggerlys then filed the instant action on June 1, 1994 seeking to set aside the consent judgment and to recover just compensation. The government moved to dismiss the complaint, invoking Fed.R.Civ.P. 12(b)(6) and 12(b)(1). The Beggerlys filed a cross-motion for summary judgment and filed an amended motion to add the Tucker Act[3] and the Quiet Title Act[4] as jurisdictional bases. The district court granted the government's motion to dismiss and denied the Beggerlys' cross-motion for summary judgment and motion to amend. The Beggerlys timely appealed.

## ANALYSIS

---

[3] 28 U.S.C. § § 1346, 1491.

[4] 28 U.S.C. § 2409a.

1.  Sovereign Immunity

The government contends that sovereign immunity bars the Beggerlys from proceeding with an independent action in equity. The government relies on *Zegura v. United States*[5] in which we held that sovereign immunity barred a bill of review brought to vacate a prior judgment obtained by the United States. The Eleventh Circuit viewed *Zegura* as controlling authority for the proposition that an independent action could not be brought against the government absent a waiver of sovereign immunity.[6] We are not so persuaded and do not find *Zegura* as controlling herein. *Zegura* dealt only with a bill of review, which is a type of equitable action that has been replaced by the motions enumerated in Fed.R.Civ.P. 60(b). Although an independent action in equity is similar to a bill of review and its modern successors -- the Rule 60(b) motions -- it is nonetheless a different action. Rule 60(b) makes the distinction clear, stating that it does not "limit the power of a court to entertain an independent action." We therefore conclude that *Zegura* does not control in the independent action context.

We have held that an independent action filed in the same court that rendered the original judgment is a continuation of the original action for purposes of subject matter jurisdiction.[7] It would be anomalous to torpedo a party bringing the independent action with a plea of sovereign immunity when the action is in reality

---

[5]104 F.2d 34 (5th Cir.), <u>cert.</u> <u>denied</u>, 308 U.S. 586 (1939).

[6]**United States v. Timmons**, 672 F.2d 1373 (11th Cir. 1982).

[7]**West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.**, 213 F.2d 702 (5th Cir. 1954).

4

a continuation of the original lawsuit in which jurisdiction was not an issue. To allow the government to use sovereign immunity as a shield where it previously has invoked the court's jurisdiction and prevailed in an action based upon its misrepresentations, negligence, or mistake would do unacceptable violence to our basic notions of justice. We therefore agree with our colleagues in the Second Circuit and now conclude and hold that governmental consent is not required to bring an independent action in the same court as the original action.[8]

2. The Independent Action

The elements of an independent action are:

(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.[9]

The Beggerlys have satisfied these elements. We now hold that the district court erred as a matter of law in denying the Beggerlys' action to vacate the consent judgment. Crucial to that determination is our conclusion that the district court erred in failing to recognize the validity of the Boudreau Grant. That document is an English translation of a 1781 Spanish land grant in which the Governor General of Spanish Louisiana conveyed Horn Island to Catarina Boudreau. Although the

---

[8]**Weldon v. United States**, 70 F.3d 1 (2d Cir. 1995).

[9]**Bankers Mortgage Co. v. United States**, 423 F.2d 73 (5th Cir.) (quoting **National Sur. Co. v. State Bank**, 120 F. 593, 599 (8th Cir. 1903)), <u>cert.</u> <u>denied</u>, 90 S. Ct. 2242 (1970).

5

available document is not the original grant, it is the only copy available, presumably because a fire destroyed the Spanish West Florida archives where the original Spanish version would have been stored. The Supreme Court has held that a certified translation of a Spanish land grant may be used to prove the existence of a grant where the original cannot be found or has been destroyed.[10] We therefore find and conclude that the English translation is the best evidence of the original grant and is admissible to prove its existence.

The government contended at oral argument that the Boudreau Grant was merely an application for a land patent. In the early 19th century Congress established land commissions to organize the private claims of landowners, in what are now the states of Louisiana, Mississippi, Alabama, and Florida, who had acquired their property from England, France, or Spain. Heirs of Catarina Boudreau presented the Boudreau Grant to the land commissioner for claims east of the Pearl River. It was not accepted. The land commissioners were responsible for ascertaining titles and claims but did not have the authority to adjudicate title. The controlling statute required that the commissioners submit claims to Congress for final action.[11] We must therefore conclude that the land commissioner's refusal to accept the application did not conclusively determine that Horn Island belonged to the United States.

It is abundantly clear that the land commissioners did not have the authority

---

[10]**United States v. Delespine's Heirs**, 37 U.S. (12 Pet.) 654 (1838).

[11]Act of April 25, 1812, 2 Stat. 713; see generally **United States v. Percheman**, 32 U.S. (7 Pet.) 51 (1833).

to confiscate property rightfully owned by private individuals.  It is well-settled that, absent a specific congressional act, land validly granted by a foreign nation remained privately owned after the United States acquired political control of the subject area.  Chief Justice John Marshall taught:

> The modern usage of nations, which has become law, would be violated; that sense of justice and of right which is acknowledged and felt by the whole civilized world would be outraged, if private property should be generally confiscated, and private rights annulled. The people change their allegiance; their relation to their ancient sovereign is dissolved; but their relations to each other, and their rights of property, remain undisturbed.[12]

Articles II and III of the treaty consummating the Louisiana Purchase, under which the United States acquired property south of the 31st parallel where Horn Island is located,[13] expressly protected the rights of private landowners.  We consider it beyond serious debate that if the Boudreau Grant was a valid land grant under the Spanish law of 1781, then Horn Island remained private property after the Louisiana Purchase.  If, however, the grant was incomplete or invalid under Spanish law, then the land commissioner was justified in his rejection.  We inquire, therefore, as to the validity of the Boudreau Grant under Spanish law at the time it was made.  The summary judgment record contains an affidavit by Professor Hans Baade, offered by the Beggerlys as evidence that the Boudreau Grant was complete and valid under the Spanish law of 1781.  On the record before us the Boudreau Grant vested complete and valid title in Catarina Boudreau.  On that record,

---

[12]**Percheman** at 86-87.

[13]**United States v. Louisiana**, 363 U.S. 1 (1960); **Foster v. Neilson**, 27 U.S. (2 Pet.) 253 (1829), <u>overruled on other grounds by</u> **Percheman.**

therefore, we must conclude that the property at issue herein remained privately owned after the Louisiana Purchase and did not enter the public domain of the United States until the misrepresentation-based consent judgment of 1982.

The government possessed a document that was vital to the Beggerlys' claim of title to the land they had acquired on Horn Island. Notwithstanding, it represented to the Beggerlys and to the district court that no evidence existed that Horn Island had ever been privately owned. This representation precipitated the Beggerlys' involuntary settlement of the government's lawsuit. Their inability to prove their title was directly caused by the government's failure to produce the grant and its misrepresentation that no private disposal had ever been made. Equity permits us to correct injustice in extraordinary and unusual circumstances such as are here presented. We exercise that authority and as to the Beggerlys set aside the challenged consent judgment as null and void *ab initio*.[14]

3. Quiet Title Act Claim

The Beggerlys filed a motion to amend their complaint to claim relief under the Quiet Title and Tucker Acts. The district court denied that motion. We read the Beggerlys' complaint and motion for summary judgment as stating alternative causes of action. Although the district court did not have jurisdiction over an inverse condemnation action under the Tucker Act,[15] it did have jurisdiction to

---

[14]We note that there are no fixed time limitations on bringing an independent action in equity. **In re West Texas Mktg. Corp.**, 12 F.3d 497 (5th Cir. 1994).

[15]See 28 U.S.C. §§ 1346, 1491 (vesting exclusive jurisdiction in the Federal Court of Claims for claims exceeding $10,000).

adjudicate title under the Quiet Title Act. We conclude that the district court abused its discretion and should have allowed the Beggerlys to amend their complaint because "[t]he requested amendment would have done no more than state an alternative jurisdictional basis for recovery upon the facts previously alleged."[16]

The record reflects that the Beggerlys legally acquired a part of Horn Island in a tax sale. Because we have set aside the earlier judgment as to the Beggerlys and have found that the United States has no legitimate claim to the land, the validity of the Beggerlys' title is a legal certainty. The government maintains, however, that a claim under the Quiet Title Act is barred unless it is commenced within 12 years of the date on which it accrued.[17] A claim is deemed to accrue on the date the plaintiff knows or should have known about the claim of the United States.[18] The Beggerlys knew about the claim at the earliest in 1976 when the government ceased contract negotiations with them for the purchase of their Horn Island property. More than 12 years passed before the Beggerlys commenced the current action; however, a statute of limitations may be tolled on equitable grounds. "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from

---

[16]**Miller v. Stanmore**, 636 F.2d 986, 990 (5th Cir. 1981).

[17]28 U.S.C. § 2409a(g).

[18]**Id.**

9

asserting his rights."[19] On the record before us the government may not benefit from the limitations period, especially in light of the diligence displayed by the Beggerlys in seeking the truth and pursuing their rights, which resulted in their discovering a grant that apparently not even custodians of the public land records could or would locate. We conclude that the limitations period was tolled from the time the Beggerlys began searching for evidence of a private disposal during the original quiet title action until they discovered the Boudreau Grant and, thus, that their action manifestly was filed within the 12-year limitations period.

We remand to the district court so that it may enter judgment quieting title in favor of the Beggerlys. Under 28 U.S.C. § 2409a(b) the United States has the option of delivering possession of the 729 acres claimed by the Beggerlys or it may elect to retain possession thereof and pay the Beggerlys just compensation for same. The district court is to take into account the compensation of $208,175.87 received by the Beggerlys in the 1982 settlement. The judgment of the district court is REVERSED and judgment is RENDERED in favor of the Beggerlys and this cause is REMANDED for further proceedings consistent herewith.

ENDRECORD

---

[19]**Rashidi v. American President Lines**, 96 F.3d 124, 128 (5th Cir. 1996). Equitable tolling may be applied against the United States. **Irwin v. Department of Veterans Affairs**, 111 S.Ct. 453 (1990).

10

EMILIO M. GARZA, Circuit Judge, dissenting:

I agree with much of today's majority opinion. I agree with the majority that the complaint is not a motion under Fed. R. Civ. P. 60(b)(1)-(6), and that it should more properly be considered an independent action in equity, since Beggerly explicitly invoked the equitable jurisdiction of the district court in his complaint. I agree with the majority that the district court erred in dismissing the action as untimely, because there is no fixed limitations period for such equitable actions. And finally, I agree with the majority that the equities of this case favor Beggerly and his family. However, because we do not have jurisdiction to provide such relief, I must part company with the majority. As judges, we have equitable discretion to do justice within the limits of the law, but we can go no further. In this case, the government has not waived its sovereign immunity to suit, which bars our jurisdiction to provide relief.

As an initial matter, I would not treat an independent action in equity as a "continuation" of the underlying suit with ancillary jurisdiction from the original action. In a similar context, the Supreme Court appears to have foreclosed the notion of ancillary jurisdiction in cases such as this one, involving a challenge to a settlement agreement in federal court. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994) ("No case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court.").

11

Furthermore, the Fifth Circuit has long held that independent actions must have jurisdiction independent of the judgments they challenge. *Bankers Mortgage Trust Co. v. United States*, 423 F.2d 73, 78 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S. Ct. 2242, 26 L. Ed. 2d 793 (1970); *Jones v. Watts*, 142 F.2d 575 (5th Cir.), *cert. denied*, 323 U.S. 787, 65 S. Ct. 310, 89 L. Ed. 628 (1944); *Zegura v. United States*, 104 F.2d 34, 35 (5th Cir.), *cert. denied*, 308 U.S. 586, 60 S. Ct. 109, 84 L. Ed. 490 (1939).[20]

*West Virginia Oil & Gas v. George E. Breece Lumber*, cited by the majority, appears to have created an exception to this general rule. *West Virginia Oil* was a federal diversity case in which the parties to the original action were diverse, but after judgment, sales of the property at stake defeated complete diversity. 213 F.2d 702, 704 (5th Cir. 1954). In *West Virginia Oil*, we held that the district court had continuing diversity jurisdiction to correct errors in the original judgment. *Id*. at 706-07. The "ancillary jurisdiction" reasoning of *West Virginia Oil* has little or no

---

[20]    I recognize that there is a conflict among the other circuits regarding whether independent actions require independent jurisdiction. *Compare Weldon v. United States*, 70 F.3d 1, 4 (2d Cir. 1995) (holding that independent actions are ancillary to original suit) *and Crosby v. Mills*, 413 F.2d 1273, 1275 (10th Cir. 1969) (same) *with In re Hunter*, 66 F.3d 1002, 1005-06 (9th Cir. 1995) (rejecting notion of ancillary jurisdiction in independent actions); *United States v. Timmons*, 672 F.2d 1373, 1378-79 (11th Cir. 1982) (same); *and Andrade v. United States*, 485 F.2d 660, 664 (Ct. Cl. 1973) (same), *cert. denied*, 419 U.S. 831, 95 S. Ct. 55, 42 L. Ed. 2d 57 (1974). *See also* 11 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure: Civil § 2868 at 403 (2d ed. 1995) (supporting notion of ancillary jurisdiction, citing generally *Pacific R. Co. v. Missouri Pac. Ry. Co.*, 111 U.S. 505, 522, 4 S. Ct. 583, 28 L. Ed. 498 (1884)); 7 James W. Moore, Moore's Federal Practice ¶ 60.38[1], at 60-399 (2d ed. 1995) (same).

precedential value in light of the Supreme Court's holding in *Kokkonen* or in light of our prior cases, reflected most recently in *Bankers Mortgage*, in which we required that an independent action be "founded upon an independent and substantive equitable jurisdiction." 423 F.2d at 78.

Moreover, to the extent that *West Virginia Oil* has any value as precedent, the case is inapposite here because it is on a completely different jurisdictional footing. *West Virginia Oil* was a case in which the parties could not review the judgment in federal court without ancillary jurisdiction. Beggerly, on the other hand, could have pursued this suit under several different statutes conferring federal jurisdiction independent of that in the original action. The federal courts would have had independent jurisdiction over a timely action under the Quiet Title Act, 28 U.S.C. § 2409a; the Tucker Act, 28 U.S.C. § 1491; and probably general federal question jurisdiction under 28 U.S.C. § 1331 (putting sovereign immunity to one side for the moment). Because there is no need to assert ancillary jurisdiction to review the underlying settlement in federal court, *West Virginia Oil* is not on point, even to the extent that it was ever good law in the first place.[21]

---

[21] Our *West Virginia Oil* opinion relies solely on an apparent misreading of Supreme Court precedent. In *West Virginia Oil*, the court confused the history of independent actions and the common law predecessors to the separate actions of Fed. R. Civ. P. 60(b). Independent actions are distinct, and "should under no circumstances be confused with ancillary common law and equitable remedies, or their modern substitute, the 60(b) motion." *Bankers Mortgage*, 423 F.2d at 78. The *West Virginia Oil* court simply cited

My concern over the characterization of this suit as independent or ancillary is not as serious as my other concerns: waiver of sovereign immunity and the proper reach of the majority opinion.

The United States is, of course, immune from suit without its consent, *Loeffler v. Frank*, 486 U.S. 549, 554, 108 S. Ct. 1965, 1969, 100 L. Ed. 2d 549 (1988), and we are to construe waivers of sovereign immunity "strictly in favor of the sovereign." *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615, 112 S. Ct. 1627, 1633, 118 L. Ed. 2d 255 (1992). Beggerly can cite no statutory waiver of sovereign immunity in this case, either in the original action or in the independent action. The majority bypasses the question of sovereign immunity by holding that "governmental

---

a Supreme Court case that found ancillary jurisdiction for the precursor to Rule 60(b) motions, and held that there was similar ancillary jurisdiction in independent actions.

The *West Virginia Oil* court relied on *Pacific Railroad of Missouri v. Missouri Pacific Railway Co.*, 111 U.S. 505, 522, 4 S. Ct. 583, 592, 28 L. Ed. 2d 498 (1884), which involved a bill in equity to vacate a judgment on the basis of fraud. The bill in equity in that case was a bill of review (one of the forebears of Rule 60(b)), not an independent action in equity. *Zegura*, 104 F.2d at 35 (characterizing the bill in *Pacific Railroad* as a "bill of review"). Therefore *Pacific Railroad* has little or no precedential force for independent actions. A bill of review, like a Rule 60(b) motion, had to be brought in the court that rendered judgment and was essentially a request that the court reopen the judgment to reverse or correct a final decree. Wright, Miller & Kane, Federal Practice & Procedure: Civil § 2867 at 394. The unremarkable fact that a motion to reopen a judgment enjoys ancillary jurisdiction therefore should not disturb our precedents holding that independent actions in equity are founded upon an independent and substantive equitable jurisdiction. *Bankers Mortgage*, 423 F.2d at 78. I agree with the *Bankers Mortgage* court, and apparently the Supreme Court in *Kokkonen*, that it is important not to confuse the two conceptually distinct avenues for review.

14

consent is not required to bring an independent action in the same court as the original action[,]" citing the Second Circuit's opinion in *Weldon v. United States*, 70 F.3d 1, 4 (2d Cir. 1995). Regardless of the equities of any individual case, governmental consent is always required as a prerequisite to federal jurisdiction. *Loeffler*, 486 U.S. at 554.

The Second Circuit's opinion in *Weldon* is not to the contrary. Although the Second Circuit in *Weldon* agrees with the majority that independent actions are "continuations" of the original actions they challenge, the court does not claim that waiver of sovereign immunity is unnecessary. In *Weldon*, the parties sued under the Federal Tort Claims Act in the original suit, which constituted a statutory waiver of sovereign immunity. 70 F. 3d at 2. The *Weldon* court held that, because the independent action was essentially a continuation of the original suit, the government's waiver of sovereign immunity in the original action should continue to bind the United States in the subsequent challenge. *Id*. *Weldon* does not suggest that waiver is unnecessary, only that it may be continued from the original suit. So even if we were to find in the instant case that independent actions should be considered a continuation of the original actions they challenge (a point I still dispute), there would still be no waiver of sovereign immunity in the original action for us to continue. Of course, we cannot equitably waive sovereign immunity on behalf of the government; therefore we do not have jurisdiction to consider this

15

suit.[22]

My final concern is that the majority reaches issues not before us in this opinion. Even if there were a waiver of sovereign immunity in this case, we would have no jurisdiction to reach the merits of Beggerly's cross motion for summary judgment, the validity of the Boudreau grant, or the ownership of Horn Island, as the majority does. These issues are fraught with difficult fact questions that must be decided by the district court, which alone has jurisdiction to consider them. Moreover, the majority should not have reached those issues on the incomplete summary judgment record before us, but instead should have remanded them to the district court. Therefore I respectfully dissent.

---

[22] Presumably a timely challenge to the original action under the Quiet Title Act or the Tucker Act, each of which involves a statutory waiver of immunity, would not suffer from this infirmity of the independent action in equity.

16